UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROBERTA RONIQUE BELL,<br><br>Petitioner,<br><br>v.<br><br>WARDEN FCI DUBLIN,<br><br>Respondent. | Case No. 17-CV-07346-LHK<br><br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>Re: Dkt. No. 1 |

Before the Court is Petitioner Roberta Ronique Bell's petition for a writ of habeas corpus under 28 U.S.C. § 2241. ECF No. 1 ("Petition"). Having considered the parties' submissions, the relevant law, and the record in this case, the Court DENIES the instant Petition.

**I.    OVERVIEW**

This Order's legal analysis is interwoven with a lengthy and complex procedural history. Thus, the Court provides an overview of the history and the issues in this case.

In 1992, Petitioner Roberta Ronique Bell ("Petitioner")—and her federal co-defendant Willie Tyler—beat, stabbed, and killed Doreen Proctor by shooting her in the chest and head. Petitioner and Willie Tyler killed Proctor on the morning Proctor was scheduled to testify in a state court drug trial against David Tyler, who was both Willie Tyler's brother and Petitioner's

boyfriend. "[Petitioner] drove Proctor to the place where she was killed, and fired the first shot, into Proctor's chest." *United States v. Bell*, 113 F.3d 1345, 1347 (3d Cir. 1997) (Alito, J.) (affirming convictions on direct appeal). Willie Tyler then shot Proctor in the head. *Id.* In July 1992, the State of Pennsylvania charged the Tylers and Petitioner with criminal homicide and witness intimidation, but Petitioner was acquitted of all state charges.

However, Proctor was an informant for a drug task force that partnered with the federal Drug Enforcement Administration ("DEA") in Pennsylvania. Thus, Petitioner and Willie Tyler ("Tyler") were then federally charged with witness tampering and other offenses. In 1996, a jury convicted Petitioner of conspiracy to kill Proctor in order to prevent Proctor's communication with a federal officer (Count 1 of the indictment); witness tampering by murder (Count 3); witness tampering by physical force and threats (Count 4); and use of a firearm in relation to a crime of violence (Count 5). *See United States v. Bell*, No. 95-CR-00163 (M.D. Pa. Jan. 19, 1996), ECF No. 62. The district court sentenced Petitioner to life on Count 3; five years on Count 1; 10 years on Count 4; and 10 years on Count 5. *See Bell*, No. 95-CR-00163 (M.D. Pa. Sept. 30, 1996), ECF No. 92. In 1997, the Third Circuit upheld Petitioner's convictions on direct appeal. *See Bell*, 113 F.3d 1345.

Tyler was convicted of the same offenses as Bell. *Id.* at 1347 n.1. In 1998, however, the Third Circuit vacated Tyler's convictions and granted a new trial. *See United States v. Tyler* ("*Tyler 1998*"), 164 F.3d 150, 159 (3d Cir. 1998). Tyler was retried and reconvicted of all offenses except conspiracy, and again sentenced to life imprisonment. His convictions on retrial were upheld on direct appeal in 2002. *See United States v. Tyler* ("*Tyler 2002*"), 281 F.3d 84, 89 (3d Cir. 2002). Tyler then collaterally attacked his witness tampering convictions pursuant to intervening Supreme Court precedent.

Tyler's collateral attacks resulted in two Third Circuit opinions, seven years apart, that ultimately foreclose Petitioner's habeas Petition here. First, in 2013, the Third Circuit concluded that intervening precedent—plus an overbroad jury instruction on witness tampering—entitled Tyler to an evidentiary hearing on his collateral attack. *See United States v. Tyler* ("*Tyler 2013*"),

Case No. 17-CV-07346-LHK
ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

United States District Court
Northern District of California

United States District Court
Northern District of California

1   732 F.3d 241, 243 (3d Cir. 2013).

2         Based on the evidentiary hearing, the district court again vacated Tyler's witness

3   tampering convictions and held a retrial. On retrial, the jury reconvicted Tyler of witness

4   tampering, but the district court set aside the convictions. *See United States v. Tyler* ("*Tyler*

5   *2020*"), 956 F.3d 116, 122 (3d Cir. 2020) (summarizing procedural history).

6         Citing the district court's judgment of acquittal for Tyler, Petitioner filed the instant

7   Petition challenging her witness tampering convictions on December 28, 2017. ECF No. 1. Yet on

8   April 14, 2020, the Third Circuit reversed the district court and reinstated Tyler's witness

9   tampering convictions. *See Tyler 2020*, 956 F.3d at 120. The Third Circuit detailed the facts

10  underlying Tyler and Petitioner's case that support the witness tampering convictions. As

11  explained in this Order, those facts and the Third Circuit's thorough analysis foreclose the instant

12  Petition.

## II.     BACKGROUND

14        Petitioner is a federal prisoner incarcerated in Dublin, California. Petitioner's habeas

15  petition under 28 U.S.C. § 2241 argues that she is actually innocent of her 1996 conviction for

16  tampering with a witness, Doreen Proctor, by murder and by use of physical force and threats.

17        Before filing the Petition, Petitioner tried to pursue relief in the United States District

18  Court for the Middle District of Pennsylvania. The Petition attaches the Middle District of

19  Pennsylvania court's order denying relief and corresponding memorandum (collectively,

20  "Pennsylvania 60(b) Order" or "M.D. Pa. 60(b) Order"). *See* ECF No. 1 at Ex. A. Because the

21  Pennsylvania 60(b) Order provided a detailed factual and procedural summary—and neither

22  Petitioner nor Respondent challenges the accuracy of this summary—the Court will rely on the

23  Pennsylvania 60(b) Order for relevant background information.

24        Moreover, on April 14, 2020, the Third Circuit reversed a district court's judgment of

25  acquittal for Petitioner's co-defendant Willie Tyler. *Tyler 2020*, 956 F.3d 116. Because the Third

26  Circuit's opinion forecloses the Petition in several ways, the Court summarizes it in Section F

27  below.

28

3

### A. Victim's Work for Law Enforcement

"In 1990, Proctor called a drug hotline in Carlisle, Pennsylvania to express concern about drug trafficking in her neighborhood." *Tyler 2020*, 956 F.3d at 120. After speaking with law enforcement, she began helping the Tri-County Drug Task Force ("Task Force") investigate the drug trade in the Carlisle, Pennsylvania area. *See* ECF No. 17 ("MTD" or "Dismissal Motion"), Exs. B-C ("Petitioner Transcript") at 53:22-54:14. Proctor began working as an informant in 1991. *Id.* at 54:15-21; MTD at 1. Proctor worked primarily with Detective David Fones, a narcotics detective in the Carlisle Police Department who was also assigned to the Task Force. Pet'r Tr. at 45:22-23, 53:22-54:2. Respondent stated that Proctor worked as an informant for the Task Force rather than the Carlisle Police Department. MTD at 1.

The Task Force investigated drug activity in Adams, Cumberland, and Perry Counties, Pennsylvania. *See* MTD, Ex. D ("Tyler Transcript") at 354:14-15. The Task Force was made up of at least the members of police departments from those counties. *See id.* at 257:5-9. Some testimony suggested that the Task Force included state and federal investigators, *see* Pet'r Tr. at 44:6-8, but this testimony conflicts with statements that the Task Force consisted of local investigators, *see* Tyler Tr. at 257:5-9.

The Pennsylvania Attorney General's Office had to approve Proctor wearing a wire for her work as an informant. *See* Tyler Transcript at 81:18-82:8, 265:19-266:5. Agent Ron Diller of the Pennsylvania Attorney General's Office ("Agent Diller") met with Proctor to gather information needed to apply for her to wear a wire. *See id.* Agent Diller was also a coordinator for the Task Force. *See id.*

During her informant work, Proctor made four controlled purchases of cocaine. Pet'r Tr. at 54:15-21. Proctor testified in preliminary hearings against the persons from whom Proctor had purchased cocaine. *Id.* at 54:24-55:2. Respondent explained that Proctor had provided, and was providing, information about a drug trafficking operation run by David Tyler ("Tyler Operation"). MTD. This conflicts with some testimony, however, that Proctor was no longer performing undercover work or providing information to the Task Force. *See* Tyler Tr. at 89:7-10; 131:19-22;

United States District Court
Northern District of California

132:15-22. Petitioner was involved in the Tyler Operation, and was David Tyler's girlfriend. MTD at 1.

Proctor was killed in Pennsylvania in 1992, the morning she was scheduled to testify in a state court drug trial against David Tyler. M.D. Pa. 60(b) Order at 2. The morning Proctor was killed, Petitioner "lured Proctor from her house by offering her cocaine." *Tyler 2020*, 956 F.3d at 121. Petitioner then convinced Proctor to take a ride in Petitioner's car. *Id.* Willie Tyler and David Tyler were in another car. *Id.* After driving to a remote location, "[Petitioner] exited her car, approached the Tylers, and told them, 'I have her.'" *Id.* Petitioner then fired the first shot into Proctor's chest. MTD at 2. Willie Tyler shot Proctor in the head. *Id.*

Proctor's body was found on the side of a road. *Tyler 2020*, 956 F.3d at 121. "[Proctor] had been beaten, shot in the chest, and then shot in the head while on the ground." *Id.* Petitioner then returned home with bloody clothes, and discussed Proctor's murder within earshot of a witness. The witness testified that "[Petitioner] said to Tyler, 'I shot Doreen but you killed her,' and Tyler responded, 'You don't know who's listening. You don't know who hears this.'" *Id.* (record citations omitted).

### B. Criminal Proceedings Against Petitioner

Petitioner, David Tyler, Willie Tyler, Jerome King, David King, and Mary Hodge were arrested and charged under state law with Proctor's murder. M.D. Pa. 60(b) Order at 2. Petitioner was acquitted of state charges in 1993. *Id.*

After Petitioner was acquitted of state charges, federal authorities investigated Proctor's killing and filed federal charges against Petitioner and Willie Tyler. *Id.* Petitioner was indicted on five counts. MTD at 3. In 1996, a jury convicted Petitioner of four counts: conspiracy to kill Proctor in order to prevent Proctor's communication with a federal officer (Count 1 of the indictment); witness tampering by murder (Count 3); witness tampering by physical force and threats (Count 4); and use of a firearm in relation to a crime of violence (Count 5). *See United States v. Bell*, No. 95-CR-00163 (M.D. Pa. Jan. 19, 1996), ECF No. 62. The district court sentenced Petitioner to life on Count 3; five years on Count 1; 10 years on Count 4; and 10 years

5

United States District Court
Northern District of California

on Count 5. *See Bell*, No. 95-CR-00163 (M.D. Pa. Sept. 30, 1996), ECF No. 92. In 1997, the Third Circuit upheld Petitioner's convictions on direct appeal. *See Bell*, 113 F.3d 1345.

Most relevant here are two of the four counts on which Petitioner was convicted: her convictions for tampering with a witness by murder in violation of 18 U.S.C. § 1512(a)(1)(A) and (C) (Count 3); and for tampering with a witness by use of physical force and threats in violation of 18 U.S.C. § 1512(b)(1)–(3) (Count 4) (together, the "Tampering Counts"). The Tampering Counts envisioned two means by which the federal element could be fulfilled: if the defendant tampered with a witness either to prevent the witness from testifying at an official federal proceeding, or to prevent the witness from communicating with a federal law enforcement officer. The indictment alleged, in support of the Tampering Counts, that Petitioner intended both to prevent Proctor from testifying at official proceedings (the "federal proceeding charge"), and to prevent Proctor from communicating to a federal law enforcement officer (the "communication charge"). M.D. Pa. 60(b) Order at 5. Thus, each of Petitioner's convictions on the Tampering Counts is supported both by a federal proceeding charge and by a communication charge.

The case against Petitioner was heard by United States District Judge William W. Caldwell of the Middle District of Pennsylvania. *See* ECF No. 16. At trial, the government introduced evidence which Respondent contended shows Proctor would have communicated with a federal officer. MTD at 10-12 (discussing Pet'r Tr.). Judge Caldwell sentenced Petitioner to 10 years' imprisonment for tampering with a witness by force and threats, and to life imprisonment for tampering with a witness by murder.[1] M.D. Pa. 60(b) Order at 3. Petitioner's conviction and sentence were upheld on appeal by the Third Circuit. *See Bell*, 113 F.3d 1345.

### C.  Petitioner's Previous Attempts at Post-Conviction Relief

In 1998, Petitioner moved to vacate or set aside her sentence under 28 U.S.C. § 2255

---

[1] Petitioner was sentenced to an additional 15 years' imprisonment on the two other counts: conspiracy to kill Proctor in order to prevent Proctor's communication with a federal officer (five years) and use of a firearm in relation to a crime of violence (10 years). *See Bell*, No. 95-CR-00163 (M.D. Pa. Sept. 30, 1996), ECF No. 92.

("Section 2255"). M.D. Pa. 60(b) Order at 3. Petitioner argued ineffective assistance of counsel, double jeopardy, a due process violation based on evidence tampering, and vindictive prosecution. *Id.* at 4. The Middle District of Pennsylvania court denied Petitioner's Section 2255 motion, and Petitioner did not appeal. *Id.*

In July 2017, Petitioner moved to reopen ("60(b) Motion") the habeas motion she had filed in 1998. *See generally*, Mot. for Relief from J., *United States v. Bell*, No. 95-cr-0163-SHP (M.D. Pa. Jul. 13, 2017). In the 60(b) Motion, Petitioner argued she was entitled to relief from judgment in light of new United States Supreme Court decisions, *Fowler v. United States*, 563 U.S. 668 (2011), and *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). Relevant here, Petitioner contended that *Fowler* held the "witness murder subsection in § 1512(a)(1)(C) required that there be a reasonable likelihood that a witness's murder was intended to prevent communication with a federal law enforcement officer or judge," 60(b) Motion at 5; that Petitioner was "being detained for conduct that has been rendered non-criminal pursuant to the Supreme Court's interpretation of 18 U.S.C. § 1512," *id.* at 9; that Petitioner's alleged co-defendant Willie Tyler had raised these same issues and been granted a new trial, *id.* at 4–6; and that Petitioner should be given the opportunity to present the same claims, *id.* at 9.

In response to Petitioner's 60(b) Motion ("60(b) Opposition"), the government argued Petitioner had failed to show "extraordinary circumstances" to reopen her Section 2255 Motion, as required by the Third Circuit. *See* Gov't Br. in Opp'n to Defs.' Mot. for Relief from J. at 10, *United States v. Bell*, No. 95-CR-0163-SHP (M.D. Pa. Aug. 10, 2017). The government explained that, before the 60(b) Motion could be granted, the Third Circuit required Petitioner to show that "'without such relief, an extreme and unexpected hardship would occur.'" *Id.* (citations omitted). The government argued that "[i]n the present case, there is a tried and true remedy available for Bell to pursue. Thus, Bell is unable to demonstrate how an unexpected hardship would occur if this Court were to deny her Motion . . . ." *Id.* at 11. According to the government, the "available" "remedy" was a Section 2241 petition in the Northern District of California, where Petitioner is confined. *See, e.g.*, *id.* at 2, 9–13.

Case No. 17-CV-07346-LHK
ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

The Middle District of Pennsylvania court denied the 60(b) Motion. *See generally*, M.D. Pa. 60(b) Order. The district court stated it "d[id] not reach the merits of Bell's claims because we agree with the government that Bell must pursue them in a petition under 28 U.S.C. § 2241." *Id*. at 2. The court relied on the government's argument that because Petitioner could pursue a Section 2241 petition in the Northern District of California, she could not show hardship. *Id*. at 10–11. The court also found there "is no issue whether a federal court in California would entertain" a petition filed by Petitioner under Section 2241 because "Ninth Circuit law would also permit Bell to file a 2241 petition in similar circumstances." *Id*. at 12.

### D. Co-Defendant's Judgment of Acquittal in the Middle District of Pennsylvania, which was Reversed in April 2020

As noted, Willie Tyler was also charged under state law for Proctor's murder. Willie Tyler was convicted of witness intimidation in violation of state law and served two years for this offense. MTD at 4. Following Willie Tyler's release, federal authorities charged him under federal law. *Id*. His case was heard by Judge Caldwell. *See* ECF No. 16 at 3. A jury convicted Willie Tyler of the same offenses as Petitioner. MTD at 4.

Willie Tyler moved for post-conviction relief under *Arthur Andersen* and *Fowler*. *Id*. The Middle District of Pennsylvania court initially denied relief. Yet on appeal in 2013, the Third Circuit concluded that "there [was] not enough in the record to negate Tyler's claim that he is actually innocent of tampering with a witness involved in an official proceeding," and that "there [was] enough evidence to support Tyler's claim that he is actually innocent of violating § 1512's investigation-related communication provisions." *United States v. Tyler* ("*Tyler 2013*"), 732 F.3d 241, 251, 252 (3d Cir. 2013). The Third Circuit remanded Willie Tyler's case to the Middle District of Pennsylvania. *See* MTD at 6. On remand, the government conceded that Willie Tyler was actually innocent of the official proceeding charge that underlies the Tampering Counts. *Id*. That left only the communication charge to support his convictions.

Willie Tyler's case was reassigned to Judge John E. Jones, United States District Judge for the Middle District of Pennsylvania. *See* ECF No. 16 at 3. In a new trial in 2017, a jury convicted

Case No. 17-CV-07346-LHK
ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

Willie Tyler of the Tampering Counts. However, Judge Jones granted Willie Tyler's post-trial motion for judgment of acquittal. *See* MTD at 6. Judge Jones concluded that (1) the government had not shown Willie Tyler intended to prevent Proctor from communicating with federal law enforcement; (2) the government's direct evidence supported only the conclusion that Proctor had been killed to prevent her from testifying; and (3) only speculative and circumstantial evidence supported the conclusion that Willie Tyler had intended to prevent Proctor from communicating with federal law enforcement. *See United States v. Tyler*, No. 1:96-CR-106, 2018 WL 10322201, at *7–15 (M.D. Pa. Feb. 14, 2018), *rev'd and remanded*, 956 F.3d 116 (3d Cir. 2020). Judge Jones also held that, because Willie Tyler knew the identity of the officers to whom Proctor reported, the *Fowler* standard was too low a burden for the government. *Id*. at *14. Because Willie Tyler knew the officers' identity, Judge Jones held that the government had to prove beyond a reasonable doubt that those officers worked for the federal government. *Id*. Because the government had not done so, Judge Jones held Willie Proctor was entitled to have his conviction vacated. *Id*. at *15.

### E. The Third Circuit's Reinstatement of Co-Defendant's Jury Verdict in April 2020

The government appealed Judge Jones' judgment of acquittal for Tyler, and in April 2020, the Third Circuit reversed. *See United States v. Tyler* ("*Tyler 2020*"), 956 F.3d 116 (3d Cir. 2020). The Third Circuit held that "a rational juror could have concluded that the evidence supported each element of the offenses charged beyond a reasonable doubt." *Id.* at 123. Specifically, the Third Circuit held that the evidence supported the four elements of witness tampering by murder and witness tampering by intimidation. The Third Circuit addressed each element in turn.

First, "[t]he evidence provided a basis for a rational juror to conclude that Tyler murdered Proctor or aided and abetted her murder." *Id.* at 124. Tyler worked with co-Defendants—including Petitioner—to murder Proctor. Specifically, the Third Circuit recounted the testimony of Laura Barrett, who stayed with Petitioner's children while Petitioner was with Willie Tyler and David Tyler the night of Proctor's murder. Barrett testified that:

> [Petitioner] returned home carrying bloody clothes and told Barrett that, if anyone asked, Barrett should say [Petitioner] was home all night. Barrett testified that

Case No. 17-CV-07346-LHK
ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

sometime later, [Willie] Tyler, Bell, and David T[yler] were at [Petitioner]'s house arguing about drugs. She heard the three of them discussing that David T[yler] gave [Willie] Tyler drugs that were supposed to be given to Jerome King, Bell's uncle. During this argument, Barrett heard [Petitioner] say to [Willie] Tyler that she ([Petitioner]) shot Proctor, but that "you killed her." [Willie] Tyler responded "You don't know who's listening. You don't know who hears this."

*Id.* at 121 (record cite omitted).

Second, "[s]ufficient evidence also establishes that Tyler killed or intimidated Proctor, at least in part, with the intent to prevent her communication with law enforcement." *Id.* To reach this conclusion, the Third Circuit applied its reasoning from Petitioner's direct appeal, *Bell*, 113 F.3d 1345. *Id.* There, then-Judge Alito held for the Third Circuit that "it was reasonable for the jury to infer that Bell feared that Proctor's continued cooperation with the Task Force would have resulted in additional communications with law enforcement officers concerning drug crimes committed by Bell, among others, *and that at least part of Bell's motivation in killing Proctor was to prevent such communications*." *Bell*, 113 F.3d at 1350 (emphasis added).

So too with Tyler. Specifically, the *Tyler 2020* Court held that "Proctor's cooperation with law enforcement was well known." *Tyler 2020*, 956 F.3d at 125. Proctor "completed controlled drug buys from and testified against individuals with close relationships with Tyler . . . [and] [e]ven after Proctor stopped making covert purchases, she continued to provide information to Detective Fones and Agent Diller." *Id.* Moreover, Tyler's retort to Petitioner that "[y]ou don't know who's listening" supports the inferences that (1) Tyler feared that law enforcement would learn about his illegal activities; and (2) Tyler was also motivated to kill Proctor to prevent Proctor's communications with law enforcement. *Id.*

Third, "[s]ufficient evidence also establishes the third element—that the 'offense' about which Proctor would have communicated 'was actually a federal offense.'" *Id.* (quoting *Tyler 2013*, 732 F.3d at 252). The evidence established this element in two ways. For one, the evidence showed that "Proctor provided information about the distribution of controlled substances, which is a federal crime." *Id.* at 126 (citing 21 U.S.C. § 841(a)(1). The Third Circuit specifically noted that:

Case No. 17-CV-07346-LHK
ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

United States District Court
Northern District of California

> Indeed, federal authorities in the Harrisburg area might have investigated and prosecuted the activities about which Proctor had knowledge. In the Harrisburg region, the DEA often made small controlled buys to develop federal cases, and federal law does not set a minimum amount of controlled substances that must be involved for the conduct to violate federal law.

*Id.* For another, "the evidence show[ed] that drug offenses about which Proctor had knowledge were federal, not 'purely state in nature.'" *Id.* (quoting *Fowler*, 563 U.S. at 677). Proctor had told Detective Fones that David Tyler's cocaine source "was in New York and that he had travelled to Jamaica." *Id.* Thus, the Third Circuit found that Willie Tyler—like Petitioner—murdered Proctor to prevent Proctor's communications with law enforcement about a *federal* offense.

Lastly, the Third Circuit held that "a rational juror could conclude that there was a reasonable likelihood that one of Proctor's communications would have been to a qualifying law enforcement officer, whether to Agent Diller or to a DEA agent." *Id.* The Third Circuit reached this holding in two steps.

The Third Circuit first addressed the district court's "incorrect view" of *Fowler*'s reasonable likelihood standard. *Id.* at 126–27. That incorrect view improperly raised the government's burden of proof. Specifically, the district court had held that because Tyler knew that Proctor reported to Detective Fones, the government needed to prove that Detective Fones was a federal law enforcement officer. *Id.* at 122. The Third Circuit disagreed. Following the Ninth Circuit and other circuits, the Third Circuit clarified that the prosecution merely needed to show that "it was 'reasonably likely' that Proctor would have communicated with a 'law enforcement officer' as defined under 18 U.S.C. § 1515(a)(4)(A)." *Id.* at 127–28 & n.14 (citing, *e.g.*, *United States v. Johnson*, 874 F.3d 1078, 1080–82 (9th Cir. 2017)). Under this lenient standard, the government "need not prove that the defendant knew that the law enforcement officer was federal or acting as an advisor or consultant to the federal Government." *Id.* at 126 n.12. Rather, the government must merely show that the "the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *Id.* at 126 (quoting *Fowler*, 563 U.S. at 678).

The Third Circuit then identified two such "qualifying officers": Agent Diller and DEA

11

Special Agent David Keith Humphreys. "Agent Diller was a qualifying law enforcement officer because he advised and consulted with the DEA." *Id.* "From 1984 to 1996, 65% of the 246 investigations that the Harrisburg, Pennsylvania DEA office initiated were jointly worked with state and local law enforcement." *Id.* at 120. Agent Diller met with Proctor more than 10 times; was present for each of her controlled purchases; and debriefed her before and after each buy. *Id.* at 128.

DEA Special Agent Humphreys was a qualifying officer by virtue of serving as a DEA Special Agent. "Special Agent Humphreys testified that had Agent Diller approached him with information from a confidential informant, it 'would be required almost' that Special Agent Humphreys would interview the informant." *Id.* at 129. The two agents "had regular contact." *Id.* at 128. In addition, the DEA had "an interest in pursuing interstate drug activity." *Id.* at 129. Proctor monitored interstate drug activity, including David Tyler's trips to Jamaica and New York City for cocaine. *Id.* at 121. "Therefore, a rational juror had a basis to conclude it was reasonably likely that Proctor would have spoken to a qualifying law enforcement officer and that Tyler murdered or aided in her murder to prevent her from doing so." *Id.*

In sum, the Third Circuit reinstated the verdict against Petitioner's co-defendant after a careful examination of the record and the elements of witness tampering.

### F. Petitioner's Current Attempt at Post-Conviction Relief in this Court

After the Middle District of Pennsylvania court denied Petitioner's 60(b) Motion, Petitioner filed the Petition in this Court pursuant to Section 2241 on December 28, 2017. Petitioner claims she is actually innocent of the 1996 convictions for the Tampering Counts. *See* Petition at 7–8. Like Tyler, Petitioner argues that *Fowler* and *Arthur Andersen* render her conduct noncriminal.

After reviewing the instant Petition, the Court concluded on February 15, 2018 that Petitioner stated a cognizable claim and ordered Respondent to show cause why the Petition should not be granted. *See* ECF No. 9 at 2.

Respondent moved to dismiss for lack of jurisdiction on June 15, 2018. MTD at 1.

12

Case No. 17-CV-07346-LHK
ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

1   Petitioner opposed, requested counsel, and noted her co-defendant Willie Tyler was granted a new

2   trial based on the same arguments Petitioner raises. *See* ECF No. 18. Petitioner also asked the

3   Court to transfer her Petition to the Middle District of Pennsylvania. *See* ECF Nos. 19, 20.

4        On March 13, 2019, the Court denied the Respondent's Dismissal Motion; denied

5   Petitioner's motion to transfer the case; and appointed as counsel for Petitioner the same attorney

6   who had represented Petitioner in the Middle District of Pennsylvania's post-conviction

7   proceedings. ECF No. 23. The Court identified factual disputes that—viewed in the light most

8   favorable to Petitioner—could allow a reasonable juror to conclude that Proctor was not

9   reasonably likely to communicate with federal law enforcement. *Id.* at 28–29. On May 10, 2019,

10  Respondent filed his opposition to the Petition. ECF No. 28 ("Opp'n"). On August 9, 2019,

11  Petitioner filed her counseled Traverse in support of her Petition. ECF No. 31 ("Traverse").

12       On April 14, 2020, the Third Circuit reinstated co-Defendant Tyler's jury's verdict as

13  detailed in the previous Section.

### III.   LEGAL BACKGROUND AND STANDARD

15       Before addressing the Petition's merits, the Court first discusses the legal standard for

16  analyzing the Petition and then summarizes the change in law on which the Petition is based.

#### A.  Section 2241 and "Escape Hatch" Petitions

18       Generally, a prisoner in custody under sentence of a federal court who wishes to attack

19  collaterally the validity of his conviction or sentence must do so by way of a motion to vacate, set

20  aside or correct the sentence pursuant to Section 2255 in the court which imposed the sentence.

21  *See Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988) (explaining that convictions are

22  generally attacked with a Section 2255 motion). Only the sentencing court has jurisdiction. *See id*.

23  at 1163. However, there is an exception to the general bar against using Section 2241 to

24  collaterally attack a conviction or sentence: a federal prisoner may seek relief under Section 2241

25  if he can show the remedy available under Section 2255 is "'inadequate or ineffective to test the

26  validity of his detention.'" *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997) (quoting 28

27  U.S.C. § 2255). This exception is sometimes referred to as the "escape hatch" to Section 2255.

28

United States District Court
Northern District of California

13

1    *Lorentsen v. Hood*, 223 F.3d 950, 953 (9th Cir. 2000). The Ninth Circuit has recognized that the

2    escape hatch is a narrow exception. *See id.*

3           A petitioner who attempts to raise a claim of actual innocence in a Section 2241 petition

4    under the escape hatch will be able to show that the Section 2255 remedy is inadequate or

5    ineffective only if she "(1) makes a claim of actual innocence, and (2) has not had an unobstructed

6    procedural shot at presenting that claim." *Stephens v. Herrera*, 464 F.3d 895, 898 (9th Cir. 2006);

7    *see, e.g., Alaimalo v. United States*, 645 F.3d 1042, 1047–48 (9th Cir. 2011) (holding that because

8    "actual innocence" claim was unavailable until Ninth Circuit overruled prior law, petitioner did

9    not have an unobstructed chance to present his innocence claim). Here, Petitioner must show that

10   "in light of all the evidence, it is more likely than not that no reasonable juror would have

11   convicted" her. *Muth v. Fondren*, 676 F.3d 815, 819 (9th Cir. 2012).

12                    **B.  The Tampering Counts and Changes in the Law**

13          Relevant here are Petitioner's convictions for tampering with a witness by murder and for

14   tampering with a witness by use of physical force and threats (together, the "Tampering Counts").

15   At the time of Petitioner's conviction, a defendant could violate the witness tampering statute in

16   two independent ways. Under an "official proceeding charge," a defendant could violate the

17   statute by intending to prevent the victim from testifying at one of the enumerated federal

18   proceedings, which "need not be pending or about to be instituted at the time of the offense." 18

19   U.S.C. § 1512(e)(1) ("subpart (e)(1)"). Under a "communication charge," a defendant could

20   violate the statute by intending to prevent the victim from communicating with a federal law

21   enforcement officer. Specifically, at the time of Petitioner's conviction, the relevant statute

22   provided:

23          (a)

24                 (1) Whoever kills or attempts to kill another person, with intent to-

25                        (A) prevent the attendance or testimony of any person in an official
                          proceeding; . . . or

26
                          (C) prevent the communication by any person to a law enforcement officer
27                        or judge of the United States of information relating to the commission or

28
                                                        14

United States District Court
Northern District of California

possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be punished [by] . . . the death penalty or imprisonment for life, and in the case of any other killing . . . .

(b) Whoever knowingly uses intimidation or physical force, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to--

(1) influence, delay, or prevent the testimony of any person in an official proceeding;

(2) cause or induce any person to--

(A) withhold testimony, or withhold a record, document, or other object, from an official proceeding;

(B) alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding;

(C) evade legal process summoning that person to appear as a witness, or to produce a record, document, or other object, in an official proceeding; or

(D) be absent from an official proceeding to which such person has been summoned by legal process; or

(3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings;

shall be . . . imprisoned not more than ten years . . . .

18 U.S.C. § 1512(a)(1)(A), (C); § 1512(b)(1)–(3) (1994).

At the time of Petitioner's conviction, the phrase "official proceeding" was defined in another statute within the same chapter as follows:

(A) a proceeding before a judge or court of the United States, a United States magistrate, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Claims Court, or a Federal grand jury;

(B) a proceeding before the Congress;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce

18 U.S.C. § 1515(a)(1) (1994).

As discussed below, the Supreme Court's decisions in *Arthur Andersen* and *Fowler* narrowed the scope of the official proceeding charge and communication charge.

### 1. The Official Proceeding Charge and *Arthur Andersen*

Following Petitioner's conviction, the United States Supreme Court clarified the nexus that was required between a defendant's conduct and a particular proceeding for an "official proceeding charge." *See Arthur Andersen*, 544 U.S. at 707-08. In *Arthur Andersen*, the government argued that subpart (e)(1) meant the government need not show any nexus at all. *See id.* at 707. The Supreme Court rejected this argument:

It is, however, one thing to say that a proceeding "need not be pending or about to be instituted at the time of the offense," and quite another to say a proceeding need not even be foreseen. A "knowingly . . . corrup[t] persaude[r]" cannot be someone who persuades others to shred documents under a document retention policy when he does not have in contemplation any particular official proceeding in which those documents might be material.

*Id.* at 707-08. The Supreme Court held that the government must show "a 'nexus' between the obstructive act and the proceeding," because "'if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding,' . . . , 'he lacks the requisite intent to obstruct.'" *Id.* at 708 (citations omitted).

The Third Circuit applied *Arthur Andersen* in considering Willie Tyler's appeal of the district court's initial decision on his habeas petition. *See Tyler 2013*, 732 F.3d at 249-51. The Third Circuit rejected the government's argument, and the district court's conclusion, that Willie Tyler's consciousness of wrongdoing was enough to fulfill the statute, without any nexus to a particular federal proceeding. *See id.* at 249. Instead, the Third Circuit relied on *Arthur Andersen* to hold that a defendant must have a particular federal proceeding in mind before he may be found

16

1    guilty of a Tampering Count. *See id*. at 249-50; *accord Valenzuela Gallardo v. Lynch*, 818 F.3d

2    808, 835 (9th Cir. 2016) (requiring "proof under § 1512(b)(1) of a foreseeable or contemplated

3    proceeding") (citing *Arthur Andersen,* 544 U.S. at 707–08). In Willie Tyler's case, the Third

4    Circuit found that the only particular proceeding Willie Tyler envisioned was David Tyler's state

5    court drug trial. Because "there was no federal proceeding contemplated at the time of Proctor's

6    murder," Willie Tyler could be actually innocent of the Tampering Counts to the extent they were

7    predicated on an official proceeding charge. *Tyler 2013*, 732 F.3d at 250–51.

8          Here, Respondent has conceded that Petitioner is actually innocent of the official

9    proceeding charge under *Arthur Andersen*. *See* MTD at 9 ("The Government acknowledges that,

10    based on *Arthur Andersen*, Bell is actually innocent of the official-proceeding charge.").

11    Therefore, the Court need not address the official proceeding charge further.

12             **2.**      **The Communication Charge and *Fowler***

13          Petitioner's conviction on the Tampering Counts was supported in part by the charge that

14    Petitioner killed Proctor in order to prevent Proctor from communicating with federal law

15    enforcement. When Petitioner was convicted in 1996, the Third Circuit only required the

16    government to prove "that the defendant believed that [the witness] *might* communicate with the

17    federal authorities." *Tyler 2013*, 732 F.3d at 251 (recounting procedural history). The United

18    States Supreme Court then announced a new standard in *Fowler v. United States*, 563 U.S. 668

19    (2011). The government must now show "that there was a reasonable likelihood that a relevant

20    communication would have been made to a federal officer." *Fowler*, 563 U.S. at 670.

21          In *Fowler*, the United States Supreme Court considered what the Tampering Counts

22    require "when a defendant (1) kills a victim, (2) with an intent (a) to prevent a communication (b)

23    about the commission or possible commission of a federal offense but (c) *to law enforcement*

24    *officers in general rather than to some specific law enforcement officer or set of officers which the*

25    *defendant has in mind*." *Fowler*, 563 U.S. at 672 (emphasis in original). The Supreme Court

26    envisioned this question arising when a defendant "was not thinking specifically about federal

27    officers, but he would nonetheless have wanted to prevent communication with federal officers

28

1    from taking place (had he considered the matter)." *Id*. The Supreme Court concluded the

2    government must show more than that a communication to federal officers *might* occur, for two

3    reasons. First, the statute requires the defendant to intend to prevent a relevant communication,

4    and one cannot intend to prevent something that could not possibly occur. Second, without some

5    floor to the standard, the statute would sweep in state and local investigations, which would

6    impermissibly extend the statute's reach beyond the "federal area that Congress had in mind." *Id*.

7    at 674-75. Accordingly, the Supreme Court held that "the Government must show that the

8    likelihood of communication to a federal officer was more than remote, outlandish, or simply

9    hypothetical." *Id*. at 678.

10        At the time of Petitioner's conviction, the government was required to show only that the

11   witness "might" communicate with the federal authorities. Thus, the government's burden is

12   higher after *Fowler* than it was at Petitioner's trial.

13        In the Petition, Petitioner argues that the government's evidence was insufficient to satisfy

14   its higher *Fowler* burden. Pet. at 6. Notably, Petitioner does not challenge the jury's conclusion

15   that she murdered Proctor, or that the murder was committed with "the relevant broad indefinite

16   intent, namely, the intent to prevent the victim from communicating with (unspecified) law

17   enforcement officers." *Fowler*, 563 U.S. at 674. Instead, Petitioner challenges whether the

18   government was able to show that her witness tampering fell within "the primarily federal area

19   that Congress had in mind" as opposed to "purely state investigations and proceedings." *Id*. at 675.

20   **IV.   DISCUSSION**

21        Petitioner was convicted in 1996 of witness tampering. Specifically, a jury found Petitioner

22   tampered with Proctor, by murder and by use of physical force and threats, to prevent Proctor from

23   testifying in federal proceedings and to prevent Proctor from communicating with federal law

24   enforcement. M.D. Pa. 60(b) Order at 5. In Petitioner's trial, the government introduced testimony

25   from Detective Fones and Agent Diller to support the federal element of the witness tampering

26   crime. Petitioner was sentenced to life imprisonment for witness tampering by murder, and to 10

27   years' imprisonment for witness tampering by physical force and threats. M.D. Pa. 60(b) Order at

28

United States District Court
Northern District of California

18

3.

The instant Petition argues that Petitioner's convictions on the Tampering Counts cannot stand. Specifically, Petitioner's counseled Traverse makes three arguments in support of the Petition. First, the Traverse argues that "the government's concession of the 'official proceedings' charge requires a new trial." Traverse at 7. Second, the Traverse argues that Petitioner "is actually innocent of the communication charge under the heightened standards articulated in *Fowler*." *Id.* at 8. Third, the Traverse argues that "the government should be collaterally estopped" from disputing Petitioner's actual innocence. *Id.* at 17.

Petitioner's arguments lack merit. The Court addresses each in turn below.

### A. Petitioner's innocence of the official proceeding charge does not warrant a new trial on the witness tampering counts.

Petitioner first argues that she is entitled to a new trial on her witness tampering convictions because she is innocent of one of the two ways she could be guilty of witness tampering. The Court disagrees. The Court first recounts the context for this argument and then explains why it lacks merit.

Petitioner collaterally attacks her witness tampering convictions: convictions for "murder of a witness, in violation of 18 U.S.C. § 1512(a)(1)(A) and (C) [Count III of the Indictment]; and use of physical force and threats against a witness, in violation of 18 U.S.C. § 1512(b)(1), (2), and (3) [Count IV of the Indictment]." *Bell*, 113 F.3d at 1346. The government could have proved either count (the "Tampering Counts") in two independent ways. The first way would be to prove that Petitioner intended to prevent Proctor from testifying at an official proceeding ("official proceeding charge"). *See id.* at 1347 (explaining charges and affirming Petitioner's conviction). The second way would be to prove that Petitioner intended to prevent Proctor from communicating with a federal law enforcement officer ("communication charge"). *Id.*

The government indicted Petitioner for *both* charges in *both* counts. *See* Indictment at 11, 13, ECF No. 28-1. Specifically, Count III of the indictment charged Petitioner with killing Proctor to (1) prevent Proctor's testimony at the trial of David Tyler in Pennsylvania state court; and (2)

19

United States District Court
Northern District of California

1    "prevent the communication to a law enforcement officer of the United States of information

2    relating to the commission" of a federal offense. *Id.* at 11. Count IV charged Petitioner with using

3    physical force against Proctor with the same intentions. *Id.* at 13. Similarly, at trial, the trial court

4    instructed the jury on both the official proceeding charge and the communication charge for

5    Counts III and IV. *See* Trial Tr. at 562:8–12 (Count III), 565:14–22 (Count IV), ECF No. 28-3.

6    The jury found Petitioner guilty on all counts, and the Third Circuit affirmed Petitioner's

7    convictions on direct appeal. *Bell*, 113 F.3d at 1346

8         However, years later, the U.S. Supreme Court and Third Circuit narrowed the applicable

9    scope of the official proceeding charge. In *Arthur Andersen LLP v. United States*, the Supreme

10   Court held that the government must show "a 'nexus' between the obstructive act and the

11   proceeding," because "'if the defendant lacks knowledge that his actions are likely to affect the

12   judicial proceeding,' . . . , 'he lacks the requisite intent to obstruct.'" 544 U.S. at 707–08 (citations

13   omitted). Applying *Arthur Andersen*, the Third Circuit held that a defendant must have a particular

14   *federal* proceeding in mind before he may be found guilty of Tampering Counts. *See Tyler*, 732

15   F.3d at 249–50.

16        In response to the instant Petition, the government did not allege that Petitioner intended to

17   prevent Proctor's testimony at a particular federal proceeding. Thus, Respondent concedes that

18   Petitioner is actually innocent of the official proceeding charge. Opp'n at 8. The parties disagree,

19   however, whether the communication charge alone can support Petitioner's conviction. Petitioner

20   argues she is entitled to a new trial under two cases: *Griffin v. United States*, 502 U.S. 46, 54, 59

21   (1991), and the Third Circuit's 2013 decision requiring an evidentiary hearing on Willie Tyler's

22   habeas petition, *United States v. Tyler* ("*Tyler 2013*"), 732 F.3d 241, 253 (3d Cir. 2013).

23   Respondent replies that two other cases control: *Bousley v. United States*, 523 U.S. 614, 624

24   (1998), and *Lorentsen v. Hood*, 223 F.3d 950, 951 (9th Cir. 2000).

25        The Court agrees with Respondent. *Lorentsen*—a Ninth Circuit precedent that applies the

26   Supreme Court's decision in *Bousley*—controls here. *Lorentsen* is remarkably similar to the

27   instant case. In *Lorentsen*, as here, a grand jury charged a 28 U.S.C. § 2241 petitioner with two

28

Case No. 17-CV-07346-LHK
ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

1   alternative ways of committing the same offense. *See Lorentsen*, 223 F.3d at 951 (summarizing

2   charges). Specifically, in count 4 of the *Lorentsen* indictment, a grand jury charged petitioner

3   Donald Lorentsen with "knowingly us[ing] and carry[ing] a firearm" in violation of 18 U.S.C.

4   § 924(c)(1). *Id.* Similarly, the trial court instructed the jury on both ways that petitioner could be

5   convicted of count 4 ("using" and "carrying"). *Id.* The jury then convicted Lorentsen on all counts.

6   *Id.*

7          Yet in *Lorentsen*, as here, an intervening Supreme Court decision made petitioner actually

8   innocent of one of the two charges underlying petitioner's conviction. Specifically, Lorentsen and

9   the government stipulated that under *Bailey v. United States*, 516 U.S. 137 (1995), Lorentsen did

10  not "use" a firearm. *Id.* at 952. Lorentsen then petitioned for a writ of habeas corpus under 28

11  U.S.C. § 2241. *Id.* Like Petitioner here, Lorentsen argued that his innocence of one alternative

12  charge entitled him to relief from his conviction. *Id.* at 953.

13         The district court denied Lorentsen's petition, and the Ninth Circuit affirmed. The Ninth

14  Circuit relied on the Supreme Court's decision in *Bousley*. In *Bousley*, petitioner "was not required

15  to prove that he was actually innocent both of using and of carrying the gun at issue because, in

16  that case, the government had charged the petitioner only with 'using' the gun." *Lorentsen*, 223

17  F.3d at 954. By contrast, "the government charged [Lorentsen] with both using *and* carrying the

18  short-barreled shotgun." *Id.* (emphasis in original). Thus, the Ninth Circuit held, "in order to prove

19  that he is actually innocent of Count 4, [Lorentsen] must demonstrate that he is actually innocent

20  *both* of using *and* of carrying the gun." *Id.* (emphasis in original).

21         The same burden of proof applies here. The government charged Petitioner with both the

22  official proceeding charge *and* the communication charge. Petitioner was likewise convicted by a

23  jury instructed on both charges. Thus, to prevail on a § 2241 petition, Petitioner must show that

24  she is "actually innocent *both* of [the official proceeding charge] *and* of [the communication

25  charge." *Id.* (emphasis in original). Contrary to Petitioner's argument, her actual innocence of the

26  official proceeding charge alone does not warrant a new trial.

27         Petitioner's citations to *Griffin* and *Tyler 2013* are unavailing. *Griffin* in fact counsels

28

21

1  against Petitioner's argument. In *Griffin*, the Supreme Court rejected defendant's attempt to set

2  aside a general guilty verdict on a multiple-object conspiracy. *Griffin*, 502 U.S. at 60. Specifically,

3  the *Griffin* defendant argued that because the evidence was inadequate to support conviction as to

4  one of the conspiracy's objects, the general verdict could have rested on the inadequate ground. *Id.*

5  at 56. The *Griffin* Court held immaterial that potential inadequacy. It would be "unprecedented

6  and extreme" to set aside a general verdict simply because one of the verdict's possible bases was

7  "merely unsupported by insufficient evidence." *Id.*

8      Here too, the government agrees that under intervening Supreme Court precedent, there is

9  insufficient evidence that Petitioner is guilty of the official proceeding charge. MTD at 6–7. Yet as

10  the *Griffin* Court held, it would be "unprecedented and extreme" to set aside a general verdict

11  because of that insufficient evidence. *Griffin*, 502 U.S. at 60; *see also, e.g.*, *United States v.*

12  *Baxter*, 761 F.3d 17, 27 (D.C. Cir. 2014) (Garland, J.) (holding same in the context of 28 U.S.C.

13  § 2255 procedural default).

14      *Tyler 2013* is inapposite. There, the Third Circuit concluded that co-defendant Willie Tyler

15  could be actually innocent of the communication charge because the jury had received an

16  overbroad instruction. Specifically, "the jury was only required to find 'that the officers with

17  whom [Tyler] believed [Proctor] *might* communicate would be in fact federal officers.'" *Tyler*

18  *2013*, 732 F.3d at 252 (emphasis in original).

19      Here, by contrast, the jury had to find more. The jury instructions did not allow conviction

20  if Petitioner merely believed that Proctor *might* communicate with federal officers. Rather, the

21  jury instructions lacked any probabilistic qualifier such as "might." Specifically, the jury was

22  instructed that "the government must show that Miss Proctor was killed *for the purpose of*

23  *preventing her* from attending or testifying at an official proceeding or *from communicating a*

24  *possible federal offense to a United States law enforcement official*." Trial Tr. 562:8–12 (Count 3)

25  (emphasis added); *accord id.* at 565:17–22 (same for Count 4). Thus, *Tyler 2013*'s basis for

26  granting Tyler's § 2241 petition fails to apply here. *See also United States v. Smith*, 723 F.3d 510,

27  518 (4th Cir. 2013) (denying habeas petition even where jury received improper instruction on

28

22

witness tampering).

In sum, Petitioner's innocence of the official proceeding charge does not warrant a new trial on her witness tampering convictions.

**B. It is likely a properly instructed reasonable juror would find that Petitioner is guilty of the communication charge under *Fowler*.**

Petitioner next argues that she is actually innocent of the *communication* charge. As the Court previously explained, Petitioner "faces a high burden of proof: she 'must show that no reasonable juror—properly instructed post-*Fowler*—could conclude that it is 'reasonably likely . . . at least one of [Proctor's] relevant communications would have been made to a federal officer.'" ECF No. 23 at 27 (quoting *Fowler*, 563 U.S. at 678); *see also Muth*, 676 F.3d at 819 (stating actual innocence standard). Petitioner argues she makes this showing in four ways. Below, the Court explains why Petitioner's arguments lack merit.

First, Petitioner argues that the government "seeks to establish jurisdiction on [] hope and mere conjecture." Traverse at 9. Specifically, Petitioner argues that at the time of Proctor's murder, "Proctor's actual cooperation was completed, and otherwise limited in time and duration to state investigations." Traverse at 9. Petitioner is incorrect. As detailed in Section I-F, *supra*, the Third Circuit conclusively held—in reversing Tyler's judgment of acquittal in 2020—that sufficient evidence supports that Proctor (1) would have communicated about a federal offense (2) to a federal law enforcement officer. For instance, "[e]ven after Proctor stopped making covert purchases, she continued to provide information to Detective Fones and Agent Diller about, among other things, David T.'s New York drug supplier and his trips to Jamaica." *Tyler 2020*, 956 F.3d at 126. Thus, a reasonable and properly instructed juror could conclude that the federal government had jurisdiction to prosecute Petitioner's crimes.

Second, Petitioner argues that Agent Diller's federal advisor role "was a fiction created by the Government." Traverse at 14. Not so. As the Third Circuit explained at length, "a rational juror could conclude that there was a reasonable likelihood that one of Proctor's communications would have been to a qualifying law enforcement officer, whether to Agent Diller or to a DEA agent."

23

*Tyler 2020*, 956 F.3d at 126. The Third Circuit reached this holding in two steps.

To start, the Third Circuit explained that the "reasonable likelihood" standard for communicating with a qualifying law enforcement officer "is a 'relatively low bar.'" *Id.* (quoting *Bruce v. Warden Lewisburg USP*, 868 F.3d 170, 185 (3d Cir. 2017)). The government "need not prove that the defendant knew that the law enforcement officer was federal or acting as an advisor or consultant to the federal Government." *Id.* at n.12. Rather, the government must merely show that the "the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *Id.* (quoting *Fowler*, 563 U.S. at 678). For instance, as the Ninth Circuit explained in *United States v. Johnson*, the government could likely meet the *Fowler* standard "without much difficulty" with evidence that federal officers (1) were in contact with state officials; (2) "had investigated similar incidents" at a state facility; or (3) "established a policy or practice of investigating similar incidents in the area." *Johnson*, 874 F.3d at 1083.

Under this standard, Agent Diller—and DEA Special Agent Humphreys, whom the Petition and Traverse fail to mention—were qualifying law enforcement officers with whom Proctor would have likely communicated. "Agent Diller was a qualifying law enforcement officer because he advised and consulted with the DEA." *Tyler 2020*, 956 F.3d at 128. Specifically, Agent Diller "met with the DEA frequently," "referred up to ten cases per year to the DEA," and was "deputized as a federal agent or served as a co-case agent" for certain DEA cases. *Id.* at 128. Indeed, from 1984 to 1996—the eight years leading up to Proctor's murder and the four years after—"65% of the 246 investigations that the Harrisburg, Pennsylvania DEA office initiated were jointly worked with state and local law enforcement." *Id.* at 120. Agent Diller met with Proctor more than 10 times. *Id.* at 128.

As for DEA Special Agent Humphreys, he was a qualifying law enforcement officer by virtue of serving as a DEA Special Agent. *Id.* As Special Agent Humphreys testified, Proctor had information about interstate drug activity of interest to the DEA. *Id.* So if Agent Diller had shared that info with Special Agent Humphreys during their regular contacts, it 'would be required almost' that Special Agent Humphreys would [have] interview[ed] [Proctor]." *Id.* at 129. Thus,

Case No. 17-CV-07346-LHK
ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

United States District Court
Northern District of California

1   contrary to Petitioner's view, Agent Diller was a qualifying law enforcement officer—as was

2   Special Agent Humphreys.

3          Third, Petitioner argues that "the Government [] relies on the speculative assertion that

4   Proctor would have testified about David Tyler's out-of-state (New York) and Jamaica drug

5   connections." Traverse at 15. This argument is flawed in two respects. To start, it misstates an

6   element of the communication charge. The government did not need to show that Proctor would

7   have *testified* about a federal offense. The government instead needed to show that Petitioner was

8   "motivated by a desire to prevent [Proctor's] *communication*" with federal law enforcement about

9   a federal offense. *Tyler 2020*, 956 F.3d at 123 (emphasis added) (quoting *Bruce*, 868 F.3d at 184).

10          In addition, it is far from "speculative" that Proctor would have communicated with federal

11   law enforcement about David Tyler's out-of-state drug connections. As the Third Circuit found on

12   detailed review of the record, "Proctor told Detective Fones that David T[yler]'s cocaine supplier

13   was in New York City and that David T[yler] made trips to Jamaica. Detective Fones relayed this

14   out-of-state drug activity to Agent Diller so that they could determine how to proceed." *Tyler*

15   *2020*, 956 F.3d at 120–21. Thus, it is likely a reasonable and properly instructed juror would

16   conclude that Proctor communicated with federal law enforcement about a federal offense

17   (distribution of controlled substances). *Id.* at 126 (holding same).

18          Lastly, Petitioner argues that Willie Tyler's post-trial judgment of acquittal supports

19   Petitioner's actual innocence. Yet after Petitioner filed her Traverse, the Third Circuit reversed

20   Tyler's post-trial judgment of acquittal precisely because Tyler is guilty of the communication

21   charge. *Id.* at 123. Thus, Petitioner's correct observation that "the evidence in [Petitioner]'s case is

22   based on the same evidence elicited in the Tyler cases" only supports denying the Petition here.

23          In sum, Petitioner fails to show that "it is more likely than not that no reasonable juror

24   would have convicted" her. *Muth*, 676 F.3d at 819.

25                  **C.   Collateral estoppel is no help to Petitioner, because her co-Defendant Tyler
                         is also guilty of witness tampering.**

26          Petitioner's final argument also relies on Tyler's now-reversed judgment of acquittal.

27

28

Case No. 17-CV-07346-LHK
ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

United States District Court
Northern District of California

Petitioner argues that because "the evidence in [Petitioner]'s case is based on the same evidence heard in Mr. Tyler's case," the government is "collaterally estopped from from disputing [Petitioner]'s actual innocence." Traverse at 17. Now that the Third Circuit has held that Tyler is guilty based on the same evidence, collateral estoppel now supports *denying* the Petition. *Id.* at 123. Even so, the Court need not rely on collateral estoppel to deny the Petition. As explained in the two previous Sections, Petitioner is not actually innocent of the communication charge. Thus, Petitioner's witness tampering convictions must stand.

## V.  CONCLUSION

For the foregoing reasons, the Court DENIES the petition for writ of habeas corpus.

**IT IS SO ORDERED.**

Dated: February 19, 2021

Lucy H. Koh
_____

LUCY H. KOH
United States District Judge

Case No. 17-CV-07346-LHK
ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

United States District Court
Northern District of California